IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK WHEELER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 18 CV 582 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| THE FITNESS FORMULA, LTD., and ) | |
| LAKEVIEW FITNESS EAST, LLC, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Mark Wheeler's debit card was erroneously charged six months' worth of gym membership dues by defendants The Fitness Formula, Ltd., and Lakeview Fitness East, LLC. After catching their mistake, defendants refunded plaintiff for the erroneous charges. Plaintiff filed this putative class action, bringing claims under the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693e(b); 1693*l*, and under the Illinois Consumer Fraud Act, 815 ILCS 505/2. Defendants move for partial summary judgment on the EFTA claim, arguing that they are not liable for violating section 1693e(b).

Plaintiff claims that defendants violated section 1693e(b) by failing to give him advance notice of the erroneous charges. Under the EFTA, defendants may (subject to conditions not relevant here) charge a member's debit card at recurring intervals, such as once a month for membership dues. If these recurring charges "may vary in amount," however, defendants must give members "reasonable advance notice." Id. No such notice, plaintiff argues, was given for the erroneous charges.

Defendants argue that they are entitled to summary judgment for two reasons. First, they did not violate section 1693e(b) because—although they erroneously double-charged plaintiff for six months—none of those charges varied in amount from what plaintiff had authorized for his monthly gym membership dues. Second, even if they violated section 1693e(b), section 1693m(c) shields them from liability because their violation was, (1) unintentional, and (2) the result of a bona fide error despite having maintained procedures reasonably adapted to avoid that error.

If either of defendants' arguments are correct, they are entitled to summary judgment. The court need not find that a violation occurred to consider if defendants can successfully assert the bona-fide error defense. See Kort v. Diversified Collection Services, Inc., 394 F.3d 530, 536 (7th Cir. 2005) (affirming a grant of summary judgment for a defendant sued under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, and assuming that the defendant violated the statute only for the purpose of considering the statute's bona-fide error defense). Here, assuming without deciding that defendants violated section 1693e(b), the court agrees that their violation was unintentional and the result of a bona fide error despite having maintained procedures reasonably adapted to avoid that error. Consequently, to the extent that plaintiff seeks to hold defendants liable for violating section 1693e(b) as to the six erroneous charges, defendants' motion for partial summary judgment is granted.[1]

---

[1] Because the parties' briefs discuss little else, the motion is granted as to the six erroneous charges only. The court expresses no opinion on whether any other charges violated section 1693e(b).

# BACKGROUND[2]

Having been a member of one of defendants' gyms for three years, plaintiff added his spouse to his membership by electronically signing a new agreement. The new agreement authorized defendants to withdraw monthly membership fees from plaintiff's debit card; these fees were $79.95 for himself and $55 for his spouse, or $134.95 in total. The next month, however, plaintiff's debit card was charged not only these fees, but also an extra $79.95. He continued to be charged an extra $79.95 for five more months. Defendants then discovered their billing errors and, within a day, credited plaintiff's account for the six erroneous charges.

The person who caught the erroneous charges was a customer service manager, Austin Martin. Each month, Martin reviews a list of members whose cards had been declined. When he saw plaintiff's name on that list, he noticed the erroneous charges. Martin credited those charges back to plaintiff's account, called plaintiff to tell him about what had happened, and, when he could not reach plaintiff, left a voicemail.

Although Martin caught the erroneous charges when he did his monthly review, his formal job responsibilities do not include auditing customer bills for errors. That was the responsibility of an accountant, Susan Remandas. Remandas knew that defendants' billing software sometimes, for unknown reasons, erroneously double-bills members when they enter into new membership agreements. New agreements supersede old agreements, and fees under old agreements are not to be charged. Defendants' billing software, however, sometimes erroneously bills members for fees under both. To catch those billing errors before members were charged, Remandas developed a procedure that she calls a "double repetitive audit."

---

[2] The facts are taken from the parties' L.R. 56.1 statements and from the depositions and exhibits on file.

3

Defendants' policy and practice required her to complete the audit and resolve billing errors before members were charged for the month.

Remandas limited her double-repetitive audit to accounts belonging to members who had entered into a new agreement within the last month. The audit, which she performed at least four times a week, had the following procedures:

1. From the gym's electronic billing system, download a Microsoft Excel spreadsheet containing member names, member account numbers, billed item descriptions, and billed item amounts.
2. Sort the spreadsheet by the column containing member account numbers.
3. In an empty column, input an Excel formula to compare the billed item amounts of adjacent rows. If adjacent rows have the same billed item amount, the formula, EXACT, will return an answer of "TRUE."
4. For rows where EXACT returned an answer of TRUE, return to the gym's billing system records to determine if the member had been erroneously double-billed.
5. If the member had been erroneously double-billed, remove the second bill.
6. When the audit is complete, open the pre-billing checklist (an Excel spreadsheet listing procedures that had to be completed before billing members for the month). Find the section of the checklist titled "Double Repetitives." Enter initials and the audit completion date.

The Microsoft Excel spreadsheet that Remandas used to perform the audit would contain 200 to 300 rows; among them, about 10 rows would return an answer of TRUE. Those 10 rows reflected potential double-bills that Remandas would need to investigate in the gym's billing system, and she would remove bills that she determined were duplicates, thus ensuring that they would not be charged to member accounts. Each audit took one to two hours. In her deposition, Remandas testified that plaintiff's erroneous charges must have been the result of her own mistake, and that except for plaintiff's case, she was not aware of any member ever having

4

been erroneously charged twice. This was confirmed by defendants' chief financial officer, Brian Singleton, who testified in his deposition that in the last eight years, no member had been erroneously charged twice. The audit procedures were established nine years ago.

## **DISCUSSION**

Summary judgment is appropriate if there is no genuine dispute of a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Defendants argue that they are entitled to judgment as a matter of law on their bona-fide error defense, which arises under section 1693m(c) of the EFTA. Section 1693m(c) shields defendants from liability when their violation was, (1) unintentional, and (2) the result of a bona-fide error despite having maintained procedures reasonably adapted to avoid that error.

Concerning intent, plaintiff argues that because the alleged violation was failing to give advance notice, defendants can assert the bona-fide error defense only if they tried to give notice. Mere efforts to avoid charging varying amounts is not enough. According to plaintiff, defendants may assert the defense only if they had, for example, used a reliable computer program to email him a notice letter, yet the program failed to send the email. Such an interpretation of section 1693m(c)'s intent requirement, however, is nonsensical. Defendants could not have given plaintiff advance notice of charges that they had no intention of charging. If defendants violated the advance notice requirement as soon as they erroneously charged plaintiff's debit card, then preventing that erroneous charge was the <u>only</u> way for them to comply. Because the parties agree that the erroneous charges were unintentional and that defendants tried to prevent those charges, defendants' failure to give advance notice was also unintentional.

Plaintiff does not dispute that defendants' accountant, Susan Remandas, maintained a double repetitive audit procedure designed to catch double billing errors before they were erroneously charged to member accounts. Defendants' bona-fide error defense thus turns on whether the audit was reasonably adapted to catch double-billing errors. The audit was not reasonably adapted, plaintiff argues, because defendants could have documented the procedure, double-checked the worksheets, and stored copies of completed audits. They did none of this. Defendants also could have expanded the audit's scope beyond members who had entered into new agreements in the last month, which would have given them more than just one chance to catch their initial error.

Such procedures might have been logical. Yet the life of the law has not been logic, but experience, and experience shows that the audit was reasonably adapted to avoid violations. Neither Remandas, who had performed the audit for a decade, nor Singleton, who supervised her during that time, knew about any member other than plaintiff who had been erroneously double charged in the last nine years. There is therefore no genuine dispute that the audit's failure rate was low. In contrast, the costs of increased precautions were high: Remandas testified that she spent one or two hours a week on these audits, four times a month; having another accountant review her work might double that time. See Ross v. RJM Acquisitions Funding LLC, 480 F.3d 493, 498 (7th Cir. 2007) (affirming a ruling that a debt collector was entitled to the bona-fide defense under the Fail Debt Collection Practices Act, 15 U.S.C. § 1692k(a), reasoning in part that "investment would be disproportionate to the slight aggregate harms resulting from the handful of [violations] that modest procedures occasionally let through the sieve"); Kort, 394 F.3d at 539 ("[Section] 1692k(c) does not require debt collectors to take every conceivable precaution to

avoid errors; rather, it only requires reasonable precaution."). Defendants' audit was cost-effective and reasonable.

Plaintiff emphasizes that the audit found 10 potential double billings every month, but that is beside the point—Remandas removed those bills *before* members were charged. That she did not do so in plaintiff's case shows only that the audit was imperfect and vulnerable to human mistake. The bona-fide error defense, however, demands not perfection, but a procedure reasonably adapted to avoid violations. Defendants' audit was such a procedure.

## **CONCLUSION**

Assuming for the purposes of the instant motion that defendants violated section 1693e(b) of the EFTA by failing to give advance notice of varying charge amounts, their violation was unintentional, and the result of a bona fide error despite having maintained procedures reasonably adapted to avoid that error. Consequently, to the extent that plaintiff seeks to hold defendants liable under section 1693e(b) of the EFTA for the six erroneous charges, defendants' motion for partial summary judgment is granted. The case remains set for a status on December 6, 2018, at 9:00 a.m., and the parties should be prepared to identify plaintiff's remaining claims.

**ENTER:  November 14, 2018**

**Robert W. Gettleman
United States District Judge**