IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK WHEELER,<br><br>Plaintiff,<br><br>v.<br><br>THE FITNESS FORMULA, LTD, doing business as FITNESS FORMULA CLUBS, and LAKEVIEW FITNESS EAST, LLC, doing business as FFC-EAST LAKEVIEW and FITNESS FORMULA CLUBS-EAST LAKEVIEW,<br><br>Defendants. | Case No. 18-cv-00582<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION & ORDER

Plaintiff Mark Wheeler ("Wheeler") brings this class action lawsuit against Defendants the Fitness Formula, LTD and Lakeview Fitness East, LLC, collectively the Fitness Formula Club ("FFC"), alleging violations of the Electronic Funds Transfer Act, 15 U.S.C § 1693 *et seq.* (Count I) and the Illinois Consumer Fraud Act, 815 ILCS 505/2 (Count 2). Before this Court is Defendants' motion for partial summary judgment on Count I. (Dkt. 79.) For the reasons stated below, Defendants' motion is denied.

## BACKGROUND

The following facts are taken from the parties' statements of undisputed facts. Defendants FFC are a fitness club chain with locations throughout Chicago. (Dkt. 91

at ¶2.) Plaintiff Mark Wheeler joined the FFC's Lakeview East facility in 2014 and signed a membership agreement detailing the terms and conditions of his use of FFC's facilities. (*Id.* at ¶1.) In February 2017, Wheeler executed a new membership agreement with FFC, adding his spouse to his account. (*Id.*) The membership agreement contains a "Payment Preauthorization" section which states in relevant part:

> Monthly membership fees and the Annual Fee are charged prospectively and on the first business day of each month along with charges for any additional services received by Member during the previous month. Member authorizes Club or its agent(s) to make an EFT or ACH withdrawal on the first business day of the month from the bank or credit card account specified below by Member for any amount due from Member under this Agreement on that date.

(*Id.* at ¶7.) EFT stands for electronic funds transfer. Wheeler furnished a Visa card linked to a checking account to pay for these charges. (Dkt. 95 at ¶7.) In the case that payments are rejected by members' banks, the agreement provides:

> If any check or credit/debit card draft payable to the Club is not honored, the Club will: (a) assess a return fee for each check or credit card rejected to reimburse the Club for the cost of collection, and (b) collect the current and past-due balance in any subsequent month.

(Dkt. 91 at ¶11.)

Under the membership agreement, Wheeler's monthly membership dues were $79.95 for himself and $55.00 for his spouse, for a total of $134.95 per month. (*Id.* at 21.) In August 2017, FFC discovered that it had erroneously been double-billing Wheeler for his individual membership dues for six months. (*Id.* at ¶¶22-23.) On August 3, 2017, FFC credited Wheeler's account to correct for the overbilling. (*Id.* at ¶23.) On September 2, 2017, FFC charged Wheeler $134.95 in membership dues,

which was offset to $115.05 due to a remaining credit balance on the account. (*Id.* at ¶24.) Wheeler, however, had cancelled the card he provided to FFC, and thus, the charge was declined and FFC assessed a $30 return fee to his account. (*Id.* at ¶25; Dkt. 95 at ¶13.)

On October 2, 2017, FFC charged Wheeler $280 ($134.95 in monthly membership dues, plus the past-due balance of $145.05). (Dkt. 91 at ¶26.) Once again, the charge to Wheeler's card was declined and FFC assessed a $30 return fee. (*Id.* at ¶27.) On November 2, 2017, FFC charged Wheeler $444.95 ($134.95 in monthly membership dues, plus the past-due balance of $310). (*Id.* at ¶29). This charge was again declined and FFC assessed a $30 return fee. (*Id.* at ¶30.) FFC sent Wheeler's account with a remaining balance of $474.95 to collections. (*Id.* at ¶¶30-31.)

On January 26, 2018, Wheeler sued FFC claiming that the membership agreement and charges assessed to him violated the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C § 1693 *et seq.* and the Illinois Consumer Fraud Act, 815 ILCS 505/2. This Court previously held that Wheeler lacked a valid EFTA claim based on the double-billed charges to his account prior to and in August 2017. (Dkt. 59.) Thus, the present motion for summary judgment on Count I concerns only the charges assessed to Wheeler in October and November 2017 pursuant to the membership agreement.

## **LEGAL STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.*

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323 (1986). After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). Construing the evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## **ANALYSIS**

Wheeler asserts that FFC violated the EFTA when, without notice, they charged him fees that varied from the amount he preauthorized in his membership agreement. The EFTA "protects consumers by providing a 'basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.'" *Bass v. Stolpher, Koritzinsky, Brewster, & Neider S.C.*, 111

F.3d 1322, 1328 (7th Cir. 1997) (citing 15 U.S.C. § 1693b). It "is a remedial statute accorded a broad, liberal construction in favor of the consumer." *Clemmer v. Key Bank Nat. Ass'n*, 539 F.3d 349, 353 (6th Cir. 2008) (internal quotations and citation omitted). Section 1693e of the EFTA permits companies like FFC to initiate "preauthorized electronic fund transfers" defined as "electronic fund transfer[s] authorized in advance to recur at substantially regular intervals." 15 U.S.C. §§ 1693a(10); 1693e. If an EFT varies from the preauthorized amount, the company is required to provide the consumer with notice:

> In the case of preauthorized transfers from a consumer's account to the same person which may vary in amount, the financial institution or designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with regulations of the Bureau, of the amount to be transferred and the scheduled date of the transfer.

*Id.* at §1693e(b).

While there is scant federal case law interpreting or applying § 1693e(b), at least two federal courts have applied the statutory provision in cases that provide the court some guidance. First, in *Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 653-54 (N.D. Ohio 2012), a class of gym members sued a fitness club alleging that in addition to monthly dues, the club had automatically debited their bank accounts for a semiannual facility management fee of $15.00 and a $10.00 cancellation fee without providing advance notice. Dismissing the members' §1693e claims, the district court found that notice of these charges was not required because the club's membership agreement, which was signed by all class members, stated that

such fees would be collected and the membership agreement identified the specific amount ($15.00 and $10.00, respectively) that would be charged.[1] *Id.*

Similarly, in *Bultmeyer v. Fitness. All., LLC*, No. CV-12-2619-PHX-LOA, 2014 WL 667585 (D. Ariz. Feb. 20, 2014), gym members sued a fitness club alleging that the club's membership agreement violated the EFTA by making members waive their rights to receive notice of varying transfers under § 1693e(b). The membership agreement authorized the club to electronically debit (1) biweekly membership dues in the amount of $18.00, (2) a biannual facility improvement fee of $15.00, (3) past due balances and (4) a $25 service fee if an electronic debit was rejected. *Id.* at *1. The provision at issue provided that although the member "is entitled to notice of all varying charges and withdrawals under the EFT," the member "waives the right to receive prior notice for charges or withdrawals made with respect to any uncollected monthly dues payments or portions of the balance due described above and the corresponding service charges, both of which Buyer [member] agrees are not varying charges or withdrawals." *Id.* at *2. The district court held that members were not entitled to notice of debits of these fees because they were "specifically pre-authorized and identified in certain sum amounts" in the membership agreement. *Id.* at *4 ("[I]dentified fixed fees and other charges are simply not 'varying' charges prompting the advance written notice required by § 1693e(b)"). The court also found it compelling that members acknowledged in the membership agreement that debits of past due

---

[1] The court dismissed without prejudice, however, the EFTA claims of two class representatives that complained the club unilaterally increased their membership dues by $1.00 without providing advance notice. While the court recognized that this varying amount could trigger the notice requirement, it concluded that the increase was *de minimus*.

balances and service fees were not varying within the meaning of § 1693e(b)[2]. *Id.* at *5. Because the fees at issue did not vary from the preauthorized amount specified in the membership agreement, the court concluded that the waiver provision in the agreement did not constitute an improper waiver of the right to notice of varying charges. *Id.* at *4.

Here, the parties dispute whether the October 2 and November 2 charges to Wheeler's account varied from the amount he preauthorized under the membership agreement, so as to trigger the notice requirement of § 1693e(b). FFC argues that the charges did not vary from the preauthorized amount because they were comprised only of fees that Wheeler had authorized in the membership agreement, namely monthly dues, past due balances, and return fees. Wheeler maintains that he only preauthorized a charge of $134.95 in monthly dues, and because the charges on October 2 ($280.00) and November 2 ($444.95) varied from that amount, he was entitled to notice. According to Wheeler he did not preauthorize the $30.00 return fee or the electronic debiting of past due amounts.

The parties' dispute as to the preauthorized amount, particularly with respect to the return fee, precludes summary judgment. Although Wheeler authorized the collection of return fees in his membership agreement, it is not clear that Wheeler authorized the *amount* of those charges. Unlike the fixed and specified fees at issue in *Robins* and *Bultmeyer*, FFC's membership agreement does not specify that the

---

[2] As the *Bultmeyer* court noted, the membership agreement in *Robins* also contained a similar provision providing that the electronic debiting of past due balances and service/return fees did not constitute "varying" charges. 2014 WL 667585 at *6.

return fee amount is $30.00, such that this Court may conclude as a matter of law that the debiting of that fee did not give rise to a variance from the preauthorized EFT amount. Neither does FFC's membership agreement include a provision explaining that return fees are not "varying" such that members should expect prior notice of them. A reasonable factfinder could conclude that the EFTs on October 2 and November 2, which included charges for return fees, varied from the amount Wheeler preauthorized in his membership agreement such that prior notice was required.[3] FFC's motion for partial summary judgment is denied.[4]

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for partial summary judgment is denied.

---

[3] The Court is also persuaded by the fact that the accompanying implementing regulation to the EFTA requires return fees to be specified in their exact amount: "The person initiating an electronic fund transfer to collect a fee for the return of an electronic fund transfer or a check that is unpaid, including due to insufficient or uncollected funds in the consumer's account, must obtain the consumer's authorization for each transfer. A consumer authorizes a one-time electronic fund transfer from his or her account to pay the fee for the returned item or transfer if the person collecting the fee provides notice to the consumer stating that the person may electronically collect the fee, and the consumer goes forward with the underlying transaction. The notice must state that the fee will be collected by means of an electronic fund transfer from the consumer's account if the payment is returned unpaid and *must disclose the dollar amount of the fee.*" 12 C.F.R. § 1005.3 (emphasis added).

[4] In its motion for summary judgment, FFC also contests Wheeler's status as an adequate class representative. The Court agrees with Wheeler that it is inappropriate to consider this issue on a motion for summary judgment and declines to opine on it at this time. The Court also declines to reach Wheeler's argument that summary judgment on Count I is inappropriate because FFC's membership agreement violates the EFTA by requiring a waiver of notice of a variance. (Dkt. 90 at 11).

E N T E R:

Dated: March 30, 2020

MARY M. ROWLAND
United States District Judge